3 0 9 0 8 4 5 Boyd Palmer and Phyllis Palmer, appellants by Mark Walton v. Heartland Illinois Food Corporation, accompanied by Robert Riffle. Mr. Walton, you may proceed. Good morning. May it please the court, counsel, Mr. Riffle? My name is Mark Walton. I represent the plaintiffs, appellants in this case, Boyd and Phyllis Palmer, who are present with us today. And this suit arose out of a declaratory judgment action that asked the trial court to construe a lease agreement and an amendment to the lease agreement. The court below, on cross motions for summary judgment, granted summary judgment in favor of Heartland, Heartland Illinois Food Corp, the defendant, an appellee, and denied the motion for summary judgment filed by the Palmers. The original lease, to have an understanding of the issue in this case, the original lease provided for a primary term of 20 years. And it also provided for two five-year extensions or options to renew. The original lease also provided that rent was set forth in a chart that varied years 1 through 5, years 6 through 10, with increasing or escalating rent, that also identified specific rents payable during the option periods. Now, toward the end of the primary 20-year term of the lease, there was an assignment to a new tenant, Heartland, and an amendment to the lease was entered into with the landlord. Now, the amendment changed the rent provisions of the original lease, which was Section 2.02, and it now provided for a flat base rent, $70,000 a year, plus a percentage of the sales that occurred at the restaurant. By the way, this was a Burger King restaurant that was an issue on the property. The amendment, however, did not alter Section 1.02 of the lease, which was what had established the options or the rights to renew the lease. And it also did not change the provision that those options to renew are deemed to be automatically exercised in the absence of a notice from the tenant to the landlord that the tenant did not want to exercise the options. Now, the issue before the court on the declaratory judgment action was whether the amendment to the lease effectively eliminated the option periods. Now, Heartland, the tenant, argues that this occurred because the amended lease or the amended rent provisions did not specifically provide for rental during the option periods. Heartland relies upon a case, primarily Barch v. Gordon Plumb, and that case was a situation where a lease stated that the rent that the tenant was to pay the landlord was set forth in an exhibit to the lease, but the exhibit was never attached. So it was completely devoid of any number that could be used to identify the rent that the tenant would be paying the landlord. The Plumbers, in this case, claim that the option periods were not effectively eliminated because the lease expressly, the original Section 1.02, which was unmodified by the amendment, specifically says that the rent for the option periods is as set forth in Section 2.02. And even as amended, Section 2.02 identifies a specific rental amount per amendment. It's $70,000 per year plus a percentage of the rent. Now, Heartland has reached the conclusion that the option periods were effectively eliminated from the lease by virtue of the amendment. By arguing that the lease, and this is on page 11 of Heartland's brief, unequivocally provides, this is Heartland's argument, the lease unequivocally provides that rents for the option periods are different than the rents during the primary term or the demise term. And I'm not certain how they reached that conclusion. Again, Section 1.02 specifically says that the rent for the option periods is as set forth in 2.02, and we have, even as amended, a Section 2.02 that identifies a rent. Now, the reference to demise term in Section 2.02 certainly does not preclude the use of the rent figure for the option periods in addition to the primary term of the lease. In other words, despite the reference in 2.02 to the demise term, it's clear that Section 2.02, as amended, also sets forth the rent for the option periods. Why is this? Because Section 1.02 unambiguously says so. So Section 2.02 does not need to make any reference to the option periods when it sets forth the rent, because that reference appears in Section 1.02 of the lease. Now, if the court were to find, as Hartland suggests, that the lease is actually silent as to the rent that's to be paid during the option periods, well, then we have this balance of two competing rules of contract construction. On the one hand, you have the rule that a court may not ignore an unambiguous term in a lease or a contract. In this case, it's the fact that the option periods are there and that they're automatically exercised in the absence of a notice. And on the other hand, you have a rule, which is enunciated in the Barge case, that the court can't supply a missing term, a missing essential term, to a contract. Now, again, it's undisputed that the option period language and the automatic exercise language... You're saying there's no missing term. I'm saying there is no missing term, because... Because it's in a separate section dealing with options and the rent during those option periods. Correct. And you're saying the amendment only goes to Section 2, whatever? Correct. To modify the primary terms, rent, or the lacquer part at the time of the assignment. Correct, but it's my contention that it modified the rent also during the option periods, because the other section, 1.02, that granted the option, says the rent that you pay during the options is the rent set forth in the rental section, 2.02. Now, again, we've got these competing rules of construction. Assuming the court rejects that initial argument and buys Hartland's argument that the lease is silent as to the rent during the option periods. Well, the Palmer's had proffered a construction of the lease that harmonizes the... On the one hand, the rule that we're supposed to give effect to those option periods. And on the other hand, the rent language in Section 2.02 that doesn't expressly make an additional reference to the option periods. And that is this. The whole argument that Hartland is making revolves around its restrictive definition of the word's demised term. Hartland contends that that includes only the primary 20 years of the lease. The Palmer's disagree with that. The Palmer's contend that the demise term of the lease includes the option periods once the option periods are effectively exercised. Now, this construction is consistent with the legal definition of demise. A demise is a conveyance of a leasehold interest. And there's no dispute that the options, once they're effectively exercised, become a part of the leasehold conveyance from the landlord to the tenant. Hartland takes issue with that because language in Section 1.02 says that the option periods commence upon the expiration of the demise term. We have to keep in mind that at the time the lease was drafted, the options could only be exercised if conditions subsequent were satisfied. Namely, that the tenant was in good standing and there were no breaches or defaults under the lease. So at the time the lease is drafted, the demise term ended after 20 years. If certain events occurred after the lease is executed and the option, the first option, is effectively exercised, it's my contention, the Palmer's contention, that that option period becomes a part of the demise term. Now, this is not only consistent with the legal definition of demise or demise term, but it's also consistent with the original language in Section 2.02 of the lease. Originally, remember, the lease had a rent chart that set forth the rent, and it says the rent for the demise term is as follows. And it says years 1 through 5 a certain amount, 6 through 10, and then you get down, and it also included the option periods. But that's separated out. I mean, it says option period. Correct. $6. I mean, it's not... Correct, Justice Lytton, but it didn't have a separate section that said the rent for the demise term, 1 through 20, and then the rent for the option periods is as follows. It included, it lumped the option periods in with the demise term. And what I'm suggesting is that's consistent with an interpretation that once those option periods are effectively exercised, they become part of the demise term. And again, accepting this construction of demise term results in a construction that does not offend the rule that you have to give effects to every unambiguous provision in a lease, i.e., the option periods. Now, Hartland proffers a construction that completely eliminates the option period language from the lease. And the only reason provided for that construction is that we don't effectively have a specific reference to a rental provision for the option periods. Now, a specific price, there is a rental price in the amendment, but it doesn't specifically say this is the rent for the option periods, at least in Section 2.02. It certainly does in Section 1.02. I think it's important to note that if, you know, you have to consider that if the parties intended to eliminate these options from the lease at the time they executed the amendment, they certainly would not have gone about it in this fashion. They would have, you would expect, eliminated the option language from Section 1.02. Instead, they left 1.02 intact and provided for a flat rent. And I see no reason to interpret the lease in such a way that that flat rent doesn't also apply to the option periods. If, however, the court is to find that the lease is silent as to the rent payable during the option periods, well, then Schumacher v. Fountain, the case cited by the Palmers, controls. And in that case, you had a lease that said the tenant had a right to renew, period. No additional language fleshing out the conditions or the rent payable during the renewal option. Well, the court held that in the absence of any other language, a right to renew is going to be on the same terms and conditions, the same rent, as for the primary term. So if this court reaches the conclusion that this lease, an issue in this case, is silent as to the rent payable during the option periods, Schumacher provides that it's the same rent as during the primary term. Interestingly, this is the same result that the Palmers suggest is what the court should reach merely by looking at Section 1.02 of the lease. It says the rent is as provided in 2.02. So in other words, the rent doesn't change from the primary term to the option periods. Now, Hartman doesn't agree that Schumacher applies. Hartman's argument is that in Schumacher, you had a general right to renew, whereas in this case, you have a right to renew that specifically says the rent is set forth in Section 2.02. Well, this gets us back to the Palmers' primary contention, which is the rent figure isn't missing. It's there. We know that the rent set forth in 2.02 applies to the option periods as well, because 1.02 says that. One other point that I want the court to be aware of, and that is that in the appellee's brief, Hartman argues that in the event this court finds that the construction put on the lease by the trial court was incorrect, it ought to remand the case for further proceedings because they've provided an affidavit that contests or that supplies an alternative construction to the lease. Well, that affidavit was clearly a violation of the parallel evidence rule. It's nothing more than an officer of Hartman proposing what he thinks the lease should be. And the trial court struck. The Palmers filed a motion to strike that affidavit. The trial court granted that motion, and the motion hasn't been, that ruling hasn't been appealed. Okay. So we have no reason to remand it. Really, this is just a straightforward question of law that requires this court to place a construction on the lease agreement and the amendment. And in light of the rules of construction, primarily the rule that the court has to, cannot ignore a clearly expressed provision, the Palmers suggest that there is no missing rent term and that it's perfectly reasonable to construe the lease such as so that the rent payable during the option period is the same as the rent that was payable during the primary term. Thank you. Okay. No questions. Thank you, Mr. Walton. Mr. Riffle, you may respond. Thank you, Your Honor. May it please the court. Counsel. The parties in this case went through significant effort. In fact, the original parties to the lease went through significant effort to define certain terms, to capitalize those terms, and to use them in very particular context and very particular purposes. And we believe that those purposes were honored by the trial court, and we think that the parties' intention in those efforts to use defined terms in the lease should be honored by this court as well. By definition, demise term, and it's capitalized, is the initial 20-year term. The parties went to great pains in Section 1.02 to also define option terms. And it says each such 5-year option, each such 5-year period to be referred to as the, quote, capital O option, capital P period, end quote. So they distinguished between demise term and option periods. Now, counsel has, I think, shifted the argument to really try to focus on 1.02 here at oral argument. And I want to start with what I think the problem is with that argument. At the time 1.02 was originally drafted, you had Section 2.02 that had very specific amounts corresponding to the option periods. And so they go on to say that the rental for the option period is provided in Section 2.02. Well, at the time the lease was originally signed, you could flip to Section 2.02 and find a line item as to what the rent was during that option period. That provision has been removed. So relying on Section 1.02 to say look to 2.02 for the lease amounts during the option period seems to be a very invalid argument. You cannot use Section 2.02 anymore to simply look up what the rental is going to be during the option period. Section 2.02, as amended, of course, it was totally taken out and replaced entirely with new Section 2.02, which only provides for the lease rate during the demise term. Again, the parties went to this effort to define their terms, and it would be speculation at best to try to say the parties really intended the term, demise term, to include the option periods as well. It's exactly contrary to the express language of Section 1.02 as well as 2.02 and the definitions the parties chose. I think probably the most important legal principle at play here is, and we quote this at page 8 of our brief in the Clem v. Herbig group case, and I briefly quote here, there is a strong presumption against provisions that easily could have been included in the contract but were not. A court will not add another term about which the agreement is silent. So if we look at Section 2.02, and particularly subsection A, it says rent for the capital D demise term, the lessee shall pay the lessor a minimum base rent of $70,000 per annum. Now, if the parties had intended to do so, they could have said for the demise term and any option periods or any extensions. That's what should have happened if indeed the parties' agreement was that there was going to be a rental amount specified for these additional periods. It would have been very simple for them to do that. They did not. We respectfully submit that there is a missing term. The missing term is right in Section 2.02A in the very first clause there where it says rent for the demise term, comma, the lessee shall pay. That's in the provision right in that sentence that says, and the option periods, there is no term. There is no monetary term for the option periods that the parties have specifically defined. So can that be implied? We don't think so, Your Honor. We think under the Barch case that we do heavily rely on, it can't be. The court in Barch says parole evidence not inconsistent with a written instrument is admissible to explain or illuminate terms otherwise uncertain or unambiguous. The incident lease, however, is not ambiguous but is missing an essential term which cannot be supplied by parole evidence. The missing term in Barch was in the original contract, was it not? The missing term was the exhibit, the exhibit B to the Barch contract, so there was no agreement that the parties could point to. In the original term, in the original term of the contract. That's true. That's true. It would have applied in that case to both the original term and the Barch case did involve an extension term. But you're right that the court found there was no exhibit, no rental amount that could be proven at all. And what we think the Barch holding is, is if the party that seeks to bind another party to a lease can't prove that there is an express agreement as to the rental amount, that under the parole evidence rule they can't enforce that lease. Now, certainly we understand the exception to that. The Shoemaker exception is when a lease says the period is five years and you may renew on the same terms, then it's pretty simple to say under Shoemaker that the parties would agree that the rent during the additional term is going to be the same as before. But here we have 1.02 that formally referenced section 2.02 with a specific line item amount for the option periods. Those option periods have been taken out. So Shoemaker doesn't apply anymore because it's not a general covenant to renew. It certainly wasn't in the original lease a general covenant to renew under the same terms because the parties had already agreed to different rental in the option periods. And here we have the old 2.02, which would have had different terms in the option periods taken out and no term supplied as to what the rent would be in the option period. So you're asking us basically to construe the amendment to have amended out the option term and then to reconstrue it so that we can't apply under a Shoemaker standard because we've taken out, we've narrowed the devised term language. I believe because the party... Am I making some kind of a... Well, the way I look at it, though, whether the parties intended this to resolve or not under Barsch really isn't important. There is a missing term. And we can only speculate as to what the parties would have done if indeed they'd have thought about it and done something with what would happen in the option period. We have the Millon Affidavit, which I want to get to in a minute, that basically says, look, this was a failing store. It should have been kicked out of the portfolio of properties. We decided to take it for this brief period of time, but we would have never agreed to pay this kind of rent without substantial improvements in the future. But again, it's a missing term. And it could be that the parties neglected to address that. It could have been an inadvertent situation where the parties just failed to address what the rent would be in an option period. But, yes, Your Honor, I would say we can't go in and supply that missing term under the theory of trying to harmonize all this. It just can't be harmonized. We're missing the lease term, the monetary term of the lease period in the option. I want to get briefly to this question of the fact that we had cross motions and the question of whether that means that the court must have decided one way or the other on those cross motions. We cite substantial authority to say that's not the case. Certainly, when parties file cross motions, they invite the court to say that there's no disputed issue of fact. Both parties come in and say no disputed issue of fact, and they invite the court to issue summary judgment as occurred here. But as we made clear in our briefs from the very beginning of the briefs, we believe that the missing term issue entitled us to judgment as a matter of law, just as the court held. Missing term, therefore, under statute of frauds, this lease can't be enforced. But we provided the affidavit of Millon and said if the court finds that contrary to our argument that it's going to enforce this lease, then parole evidence comes in as to what the party's intentions were. And the court did not strike the Millon affidavit based on any impropriety of the affidavit. The court struck the Millon affidavit as being moot because the Millon affidavit went to the intention of the parties, and the court said I don't need to get to the intention of the parties. They have a missing term. Therefore, I'm not going to enforce the lease at all. But the Millon affidavit was competent. The court did not in any way indicate that there was any evidentiary problem with the Millon affidavit. We struck it only because of the fact that it was a moot issue in light of the primary ruling as to the lack of that missing term. In conclusion, we believe that the amendment unambiguously establishes that there was no agreement as to rent during the option period. Looking at the definitions, the demise term is different than option period. The parties chose those words, and their choice of words should be honored. Part of them only agreed to the rental amount of $70,000 as minimum rent during that three-year tail period of the original demise term. That was the agreement. During the three-year demise term, they paid that minimum rent. They had no agreement to pay rent as to any additional period. And to attempt to force Heartland to do something which it had not agreed to do would be contrary to the law. And finally, and most importantly, as the trial court specifically held, supplying the missing term under these circumstances, or speculating that the parties intended that that same rental would apply during the option period as applied during the initial term or demise term would be a violation of the statute of frauds. For all those reasons, your honors, we respectfully request that the decision of the trial court be affirmed in all respects. Thank you. Thank you, Mr. Griffin. Mr. Walton, you may reply. Briefly, with respect to the lease and its definition of demise term, I would invite the court to carefully read section 1.02. And I think what you'll find is that demise term is not actually defined in that section. The caption of the section says demise term, but the language says the use of this lease is for a period of 20 years. And if the lessee complies with terms and conditions, they can also extend it for two additional five-year periods. So following counsel's suggestion, the definition of demise term clearly includes the option periods. So I would invite a closer view of that section. But irrespective of whether the demise term includes only the primary 20 years or also includes the option periods, counsel's efforts to distinguish the Schumacher case I don't think are satisfactory. If you look at Schumacher, again, that lease was clearly silent as to what the rent during the option periods would be. In this case, this court has one of two choices when it looks at section 2.02 of the amendment. That section either states what the rent is during the option periods, which I believe is the case, because all you have to do is refer to section 1.02, or section 2.02 is silent as to the rent for the option periods. It's one or the other. But even if the court concludes that it's ambiguous, Schumacher is, and this comes from a case that actually heartens sites, Lake Forest case, federal case. Schumacher fills the gap. If the lease is unambiguously silent as to the rent during the option periods, Schumacher applies. If the lease is ambiguous as to whether the rent for the option periods is addressed in 2.02, then you've got this choice of the two different constructions. Either it does, in which case the case is resolved, or if it's silent, then Schumacher fills the gap. So I think that if the court does not believe that section 1.02, when it says that the rent payable during the options is set forth in 2.02, if the court does not believe that the rent set forth in section 2.02 was intended to apply during the option periods, then you get to this question of a construction of what it does mean, and that's where Schumacher results in the exact same outcome. The rent during the option, again, you know, counsel hasn't provided, I mean, Hardin doesn't provide an explanation for why it is that the rent couldn't be the same during the option periods as it was during the primary term. The party sat down, amended the lease, and, you know, the restaurant was struggling. I mean, you know, even if you take this affidavit, well, that's why they had a percentage rent term, a reduced flat rent of $70,000 a year, and then a percentage of sales. Well, that necessarily results in a fluctuating rent. Sales are up, the rent's higher. If the sales are down, the rent's lower with a base or a floor of $70,000. So it's not that apt to say, well, you know, the rent during the option periods is unambiguously different than the rent during the primary term. The lease doesn't say that, and it ignores the language in Section 1.02. So for those reasons, I would respectfully request that this court reverse the trial court's judgment and grant instead judgment in favor of the Palmers. Thank you. Thank you, Mr. Walton. Thank you, counsel, both, for your arguments in this matter this morning. It will be taken under advisement that this position shall issue. The court will stand in brief recess for panel discussion. The court is now in recess.